PANHANDLE & S. F. RY. CO. et al. v. VAUGHN. (No. 1059.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 29, 1916. On Motion for Rehearing, Jan. 3, 1917.)

1. TRIAL ☞194(20) — INSTRUCTIONS — SINGLING OUT EVIDENCE.

In an action for damages to a shipment of cattle, a requested charge that, if the cattle were damaged when unloaded as a result of failure to transport them with reasonable care and dispatch, but the damages were temporary and such as should have been overcome within a reasonable time by the exercise of reasonable care on the shipper's part, the jury in estimating the damages should consider their temporary nature and the decree to which the cattle would have recovered with proper care and handling by the shipper should be refused, because on the weight of the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 439; Dec. Dig. ☞194(20).]

2. CARRIERS ☞228(3)—LIVE STOCK—DAMAGES—EVIDENCE.

In such action evidence as to temporary damages to the cattle and the degree to which they would have recovered with proper care and handling by the shipper was admissible upon the real injury and as affecting the question of damages.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. ☞228(3).]

3. APPEAL AND ERROR ☞230—OBJECTIONS AT TRIAL—EVIDENCE—TIMELY OBJECTION.

In an action for damages to a shipment of live stock, where the shipper testified that his cows were worth $5 less in the condition they were on arrival than if they had arrived in reasonably good condition, an objection, after he had fully answered, without any request to have the testimony stricken from the record, was too late to afford a ground of exception.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. ☞230; Trial, Cent. Dig. § 183.]

4. TRIAL ☞252(7)—INSTRUCTION—APPLICABILITY TO EVIDENCE.

In such action a charge not to consider any application or order for cars made at one point to be furnished at another point as binding upon the defendant *held* properly refused as inapplicable to the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 602; Dec. Dig. ☞252(7).]

5. TRIAL ☞191(11)—INSTRUCTION—ASSUMPTION OF FACT—NEGLIGENCE—LOADING LIVE STOCK SHIPMENT.

In an action for damages to a shipment of live stock from delay, etc., a requested charge that the jury should not consider damages to the cattle by reason of the cows and calves being loaded in the same car was properly refused, as it assumed that it would be negligence to load them together, and excluded the question of ordinary care in so loading them.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 431; Dec. Dig. ☞191(11).]

6. CARRIERS ☞230(12)—LIVE STOCK—ACTION FOR DAMAGES.

In such action the submission of the measure of damages based on their market value at a certain point *held* warranted by the evidence as to their market value at such point.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 961; Dec. Dig. ☞230(12).]

7. CARRIERS ☞228(3)—LIVE STOCK—ACTION FOR DAMAGES—EVIDENCE.

In such action evidence as to the time in which a witness had made a shipment over the same roads as far as a certain point was admissible, where the testimony showed that the conditions connected with the shipments were similar.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 960; Dec. Dig. ☞228(3).]

8. CARRIERS ☞218(8)—LIVE STOCK—ACTION FOR DAMAGES—LIABILITY.

A carrier must use ordinary care to prevent injury to cattle while in the pens awaiting shipment, after acceptance for transportation if such care, feeding, etc., becomes necessary on account of a delay, notwithstanding the contract of shipment required the shipper to care for the cattle while in the pens awaiting shipment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 674–696, 927, 928; Dec.Dig. ☞218(8).]

9. APPEAL AND ERROR ☞1067 — HARMLESS ERROR—INSTRUCTIONS—REFUSAL.

In an action for damages to a shipment of live stock, the refusal of defendant's charge that, if it had a train on which the shipment could have moved at a certain time, and that the movement of the cattle then would not have constituted an unreasonable delay, and that they would have been moved then if the shipper had not agreed that they might remain in the pens, a verdict should be found for defendant, in view of a similar general charge, and of the fact that some time intervened between the time the cattle were penned and the agent's conversation with the owner, if erroneous, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229; Dec. Dig. ☞1067; Trial, Cent. Dig. § 475.]

10. APPEAL AND ERROR ☞1050(1)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action for damages to a shipment of live stock from delay in transportation, etc., error, if any, in permitting an experienced shipper to testify that the cattle were damaged by delay in the pens, in view of the verdict, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153, 4157; Dec. Dig. ☞1050(1).]

On Motion for Rehearing.

11. APPEAL AND ERROR ☞171(1)—PRESENTATION OF QUESTION — REQUESTED CHARGE — "CHANGE OF THEORY."

Where appellant submitted specific grounds embodied in a peremptory charge why it should be submitted to the jury, he cannot on appeal sustain the charge upon another and different ground not presented in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 1053; Dec. Dig. ☞171(1).]

Appeal from District Court, Hale County; R. C. Joiner, Judge.

Action by Tom Vaughn against the Panhandle & Santa Fé Railway Company and others. Judgment for plaintiff, and defendants appeal. Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Terry, Cavin & Mills, of Galveston, Baker, Botts, Parker & Garwood, of Houston, H. S. Garrett, of San Angelo, Madden, Trulove, Ryburn & Pipkin, of Amarillo, and C. E. Mays, Jr., of San Angelo, for appellants. Mathes & Williams, of Plainview, for appellee.

HENDRICKS, J. The appellee, Tom Vaughn, sued the Galveston, Harrisburg & San Antonio Railway Company, the Kansas City, Mexico & Orient Railway Company of Texas, and the Pecos & Northern Texas Railway Company to recover damages on account of a shipment of cattle from Marfa, Tex., to Plainview, Tex., alleging twenty-six hours' delay at Marfa on the part of the Galveston, Harrisburg & San Antonio Railway Company, in loading out said cattle after receiving the same, and five hours' delay on the line of the Pecos & Northern Texas Railway Company at Sweetwater, Tex., before unloading them at such point, and an additional delay by said company of five hours after the same had been reloaded before they were forwarded from Sweetwater. It is averred that 15 head of the cows died, of the value of $55 each, also 5 head of calves died, of the value of $10 each, and that the remainder of the shipment was injured to the extent that they were worth $5 less than they would have been if properly transported.

Upon the submission of a general charge the jury found against the defendant Galveston, Harrisburg & San Antonio Railway Company the sum of $286.25, and against the defendants Pecos & Northern Texas Railway Company and the Panhandle & Santa Fé Railway Company the sum of $795, and in favor of the defendant Kansas City, Mexico & Orient Railway Company, in accordance with a peremptory instruction of the court.

The Panhandle & Santa Fé Railway Company became a party defendant by an amendment, in which it is alleged that the Pecos & Northern Texas Railway Company had changed its name to that of Panhandle & Santa Fé Railway Company.

[1, 2] The defendant seasonably requested the trial court to give the following special charge, No. 7, the refusal of which is complained of by the first assignment of error:

"Although you may believe from the evidence that plaintiff's cattle were damaged when unloaded at Plainview, Tex., and further believe that such damages, or any portion thereof, resulted from the failure of defendants to transport said cattle with reasonable care and dispatch, yet if you further believe that such damages were of a temporary nature and such as should have passed away or been overcome within a reasonable time by the exercise of reasonable care on the part of the plaintiff for his cattle, then in estimating the damages to plaintiff's cattle which were not dead upon arrival at Plainview, if you find that any of his cattle were damaged, you shall take into consideration the temporary nature of such injuries and damages, and the degree to which said cattle would have recovered after arrival at Plainview, with the exercise of proper care and handling by the plaintiff."

The above charge is in a different form from most of the charges of a similar character, and has embodied within it a different element (that of ordinary care on a collateral issue) than we are able to find passed upon by the higher courts. Ordinarily a charge of this nature, passed upon by the appellate courts, is one instructing the jury that they may take into consideration any subsequent recuperation or recovery of weight or shrinkage in estimating plaintiff's damages.

The above question has been much mooted and considerably discussed in the appellate courts of this state, and we have concluded that the better rule is that such a charge should be refused because it is on the weight of the evidence in singling out a part of the same and giving undue prominence thereto. The testimony, of course, is admissible as relevant to the real injury to the cattle and as affecting the question of damages, measured by the difference in the market value. This question was considered by this court in the case of Panhandle & Santa Fé Railway Co. v. E. H. Norton, Appellee, 188 S. W. 1011, decided October 18, 1916. The general charge of the court in that case was in effect that in arriving at the amount of the damages the jury could take into consideration the question of the recovery, and if they found and believed that the animals entirely recovered, and after such recovery were of the same or greater market value as they would have been if such injury had not occurred in the first instance, to find against the plaintiff and in favor of the defendant. The Panhandle & Santa Fé Railway Company complained of that charge, and, while the court held the charge erroneous, it was held that it was a charge benefiting the defendant, and not the plaintiff. The rejected special instruction herein is, in effect, that if the jury believed that the damages or injuries were of a temporary nature and such as should have passed away or been overcome within a reasonable time, by the exercise of ordinary care on the part of the plaintiff in handling his cattle, they "shall take into consideration the temporary nature of such injuries and damages and the degree to which said cattle would have recovered after arrival at Plainview with the exercise of proper care and handling by the plaintiff." The injected element of a recovery based upon the hypothetical exercise of proper care and handling by the plaintiff would have been wholly erroneous to have submitted to the jury. The degree to which the cattle would have recovered, with the exercise of proper care and handling by the owner, would have been a collateral issue, and the real merits of the case could have been switched to the extent as to wholly confuse the jury in arriving at a just verdict. A charge of a similar character is also discussed in the case of Panhandle & Santa Fé

Railway Company et al. v. Morrison, 191 S. W. 138, decided this day, November 29, 1916, by this court, except that the question of ordinary care on the part of the owner, also injected into that charge, is not adverted to. Those two cases cite the numerous authorities on the general question.

[3] The plaintiff, Tom Vaughn, was permitted to testify over the objection of defendants that his cows were worth $5 less in the condition they were in on arrival at Plainview than they would have been worth had they been in reasonably good condition when they arrived at destination. The trial court qualified the bill of exceptions, which qualification is not shown by appellant's statement that:

"No objection was made to the testimony or answers until witness had fully testified on the point interrogated about, and then no request to have said testimony stricken from the record was made."

We have found many authorities discussing questions approximating the particular question, but very few that decide the exact point. The bill of exceptions does not show any reason why appellants' attorneys waited until the answer had been fully made before the objection was expressed. The bill shows that the questions were explicitly framed, at least sufficiently so to apprise counsel of the nature of the answer attempted to be elicited. Justice Hurt said:

"But, concede their incompetency, the questions to this witness were not so framed as to preclude objections when the evidence was admitted by the defendant, and he will not be permitted to speculate on the answers." Gonzales v. State, 30 Tex. App. 203, 16 S. W. 981.

Circuit Judge Adams, in the case of Railway Co. v. Duke, 192 Fed. 309, 112 C. C. A. 567, uses the following language:

"After the answer was given, the defendant for the first time objected to the question and answer and on adverse ruling saved an exception. This practice of permitting a question to be answered without objection, and, if perchance the answer be unfavorable, to then object to both question and answer, is not proper or fair practice. It permits a party to speculate on the chances of a favorable answer before committing himself against the question."

See Jones on Evidence, Blue Book, vol. 5, § 893, p. 367.

[4] The fourth assignment of error complains of the refusal by the trial court of the following requested charge:

"You are charged not to consider any application or order for cars made at Alpine, Tex., by the plaintiff or his agent, to be furnished at Marfa, as binding upon the defendants in this case."

The cattle were purchased by Vaughn from one Gist. Gist was to deliver the cattle in the pens at Marfa preparatory for shipment, and an order was made for cars at Alpine, another and different station, in some manner communicated to the agent of the Galveston, Harrisburg & San Antonio Railway Company at Marfa. The trial court charged the jury that, if the defendant Galveston, Harrisburg & San Antonio Railway Company, as alleged in the petition, received and accepted the cattle for transportation, and "after receiving and accepting said cattle for transportation" unreasonably delayed the loading or shipping of said cattle, etc., to find for the plaintiff. Gist testified that he had a talk with the agent of the Galveston, Harrisburg & San Antonio Railway Company at Marfa, and was told that the cars would be ready the next morning, June 11th, at Marfa. He also testified that the agent told him to get the cattle and put them in the pens and that he would have a train there to take them out when they got them in the pens. Gist's broker or agent at Alpine, it seems, had made the particular trade and sold the cattle to Vaughn. Gist also testified:

"We asked the agent about the cars, and I think, if I am not mistaken, he said the cars had been ordered by the agent who sold my cattle to Mr. Vaughn from Alpine."

The agent, Hubbard, of the Galveston, Harrisburg & San Antonio Railway Company at Marfa, testified:

"The cattle were placed in the pens at Marfa by the parties in charge before the bills of lading were issued. The cars for these cattle were ordered on the 9th of June. That was the first information I had. The order was placed at Alpine, and I was informed of it. * * * The shippers told me the cattle were on the road into Marfa on the 10th of June, and that they would be in Marfa the next day, and they told me on the 11th of June at 1:20 p. m., I believe it was, that they would be there in half an hour, and they got there, as they told me, at 3:20. I made a record of these things."

It is shown without controversy that the agent was acting upon the application for the cars made at Alpine, and acquiesced in to that extent that the special charge mentioned above, if submitted to the jury, would have been inappropriate. The authorities cited by appellants do not apply to this character of case.

[5] The appellants complain in their fifth assignment of error of the refusal of the trial court to submit a special charge to the jury that they should not consider any damages caused to the cattle "by reason of the cows and calves being loaded and mingled in the same car." This charge assumes that it would be negligence to load cows and calves together, and does not submit to the jury the propriety or question of ordinary care in loading cows and calves in the same cars.

The sixth assignment of error is overruled for the same reasons presented for overruling the fourth assignment.

[6] The only proposition under the seventh assignment of error presents the following complaint:

"The court was not authorized to submit the measure of damages contained in paragraphs 5 and 8 of the main charge, because there was no evidence as to the market value of such cattle at Plainview, Tex., at the time and in the condition that they actually arrived."

Paragraphs 5 and 8 of the court's charge, each addressed to the measure of damages applicable to the Galveston, Harrisburg &

San Antonio and the Panhandle & Santa Fé, were in form a correct charge on that subject. The appellants in their assignments assert that subdivision "C" of paragraph 2 of their written objections and subdivision "C" of paragraph 4 of their written objections complain of the respective paragraphs of the court's charge. The objection in each instance is "because there is no competent testimony to prove the measure of damages applicable to this case." The point made in the proposition is that there was no evidence as to the market value of the cattle at Plainview at the time and in the condition that they actually arrived. A general objection of the nature indicated would be of very little avail to a trial court for the purpose of correcting any supposed error, for the reason that in a record of this kind and a trial of this length a trial court could readily say that there was competent testimony tending to prove the measure of damages applicable to the case. The particular point in the proposition was not presented to the trial judge. However, the plaintiff, Vaughn, did testify:

"I was familiar with the value of such cows as these at Plainview at that time. Cattle were selling here then from $55 to $60. Cows such as these were worth $60 at that time."

There was considerable testimony of injury to the cattle on account of their shrinkage resultant from the delay. As shown, Vaughn testified they were worth $5 per head less than they would have been worth if they had arrived at Plainview in a reasonably good condition. The assignment is overruled.

[7] The witness Gist, while testifying in behalf of the plaintiff, stated that in May, 1914, he made a shipment from Marfa, Tex., to Littlefield, Tex., over the same roads as plaintiff's shipment, as far as Lubbock, Tex., and said that they made the shipment in less than 36 hours. This testimony was objected to for the reason that one shipment made by the witness in May would not tend to fix a standard or prove whether defendants were negligent in handling plaintiff's cattle, and because it was not shown that witness' cattle were shipped under similar conditions, the same number of cars, in the same kind of train, and that said witness was not qualified to say what would have been an ordinary run from Marfa to Plainview.

The only proposition, however, under the eighth assignment is that:

"It was error to permit said witness to testify as to the time made by another of defendant's trains, in the absence of a showing that the conditions connected with said shipment and said train were similar."

The trial court also qualified this bill by stating that the witness had testified that his shipment came over the same road from the initial point as far as Lubbock, and then gave the distance from Lubbock to Littlefield, the latter being the destination of witness' shipment, and also the distance from Lub-

191 S.W.—10

bock to Plainview, and further testified that he was with the Vaughn shipment as far as Sweetwater, and that the trains carrying each of these shipments were the same. Appellants say:

"The qualification by the court is not supported by the record, in that the witness nowhere testified to the distance from Lubbock to Plainview, or that the trains carrying the shipments were the same."

This witness testified as to the distance from Lubbock to Plainview in this manner:

"It is 39 miles from Lubbock to Littlefield, and they call it 48 miles from Lubbock to Plainview."

He also said:

"The train on which Mr. Vaughn's cattle were carried was about the same kind of train as the one on which my cattle were transported in May." "My cattle were on a fruit train over the Orient, and Tom's was too."

The real question asked this particular witness to which objection was made was:

"Do you remember, or can you recollect, how long you were in shipping, how long these cattle were in being shipped from Marfa to Lubbock?"

The comparison really was as to the time taken in making the two runs over the same roads from Marfa to Lubbock. If the similarity of conditions is an ingredient to the materiality of this testimony, we think the same were sufficiently similar for that purpose, as shown by the testimony. The assignment is overruled.

[8] The plaintiff requested special charge No. 1, which was given by the court to the jury as follows:

"You are charged that it was the duty of defendant the Galveston, Harrisburg & San Antonio Railway Company to use ordinary care to prevent injuries to plaintiff's cattle while same were in the pens awaiting shipment after they had been received and accepted by said defendant for transportation, and if after said cattle were received by said defendant for transportation, it became necessary that said cattle should be fed to prevent injury, and said defendant did not use ordinary care to feed said cattle, and such failure was negligence, and because of such failure, if any, plaintiff's cattle were injured, then said defendant would be liable to plaintiff for all damages if any, caused said cattle by such failure, if any, of said defendant."

It was objected that the charge was erroneous because the defendant was not charged with the legal duty to feed plaintiff's cattle while in the pens awaiting transportation; because by the terms of the written contract the plaintiff was expressly enjoined with the duty to take care of and feed his cattle while in the pens at Marfa awaiting transportation; because the special charge absolutely ignores the fact that it was the plaintiff's duty to exercise ordinary care to feed his cattle while in the pens at Marfa, and ignored defendant's defense of contributory negligence in this respect; because the charge ignores the issue as to whether or not the plaintiff agreed or acquiesced in the delay at Marfa, and places the duty upon the defendant, regardless of whether plaintiff consented to the delay at Marfa and under-

took to care for the cattle himself. However, the only propositions under this assignment are as follows:

First. "It was error for the court to give such special charge because the same places upon the defendant Galveston, Harrisburg & San Antonio Railway Company the duty to care for and feed plaintiff's cattle while in the pens, when the testimony is conflicting as to whether or not said defendant had received said cattle for transportation." Second. "It was error * * * because, as a matter of law, it was plaintiff's duty to feed and care for his cattle until they had been received by the Galveston, Harrisburg & San Antonio Railway Company for immediate transportation, and the testimony in this case shows that said cattle were not so received by defendant until the 12th of June, 1914."

It is noted that the special charge did not devolve the duty upon the railway company to feed and care for the cattle, unless it became necessary to do so, and not until after they had been received and accepted by the defendant for transportation. These cattle were placed in the pens on the 11th at Marfa for shipment, and were not shipped until the 12th. The agent of Galveston, Harrisburg & San Antonio testified that they were brought in and placed in the pens at 3:20 p. m., and that the shipper reported them ready for shipment at that time on the 11th. It is shown that the order for the cars received by him from Alpine on the 9th of June was really accepted by him for that purpose. He testified that the shippers told him that the cattle were on the road into Marfa on the 10th of June, and would be there the next day, and that he made a record of all these things. Gist, representing the plaintiff, testified that he had a talk with the agent at Marfa on the morning before the cattle were brought in (the 10th), and the agent told him the cars would be ready the next morning (the 11th) at Marfa; that the agent said to go ahead and get the cattle and that they would get out as soon as he got them in; that the agent told him to go ahead and get the cattle and put them in the pens and that they would have a train there to take them out when they got them in the pens, and they remained in said pens thereafter for about 30 hours. There is not the slightest testimony in this record that the Galveston, Harrisburg & San Antonio Railway Company's agent in any manner refused to receive the cattle as a representative of the carrier at the time they were placed in the pens. It is clearly inferable that at first, as between the agent and the other parties, there was every expectation of an immediate shipment. It is true this agent testified:

"The cattle were in the pens and partly in the cars at Marfa when I first saw them."

However, there was considerable done and said previous to that time with reference to the penning of the cattle and the expectation of shipment. We do not think the testimony is conflicting as to whether the defendant received the cattle for transportation; neither do we think that the testimony shows that the cattle were not received by the defendant's agent until the 12th of June, 1914, as raised in the two propositions mentioned. The contract was not signed until the cattle were loaded.

"The duty of feeding and watering the cattle, if it became necessary on account of the delay, devolved upon defendants while the cattle were awaiting shipment in their pens, notwithstanding the fact that the contract of shipment containing the provisions set out above was offered in evidence. The company's responsibility attaches as soon as the cattle are delivered to it in its pens, after which time a failure to exercise ordinary care on its part to prevent injury would render it liable in damages to the owner." Railway Co. v. Crawford, 146 S. W. 330, and authorities therein cited.

The ninth assignment is overruled.

[9] The tenth assignment of error is a complaint of the trial court's refusal of defendant's special charge No. 13, which was, in substance, that if the jury believed from the testimony that the Galveston, Harrisburg & San Antonio Railway Company had a train on which the shipment could have moved at about 4 o'clock in the afternoon of June 11, 1914, and that the movement of the cattle at the time would not have constituted an unreasonable delay on the part of the Galveston, Harrisburg & San Antonio Railway Company, and that said defendant would have moved plaintiff's cattle on said train had it not been for the acquiescence on the part of plaintiff, Vaughn, that said cattle remain in the pens at Marfa until the next day, in order that they might be transported without unloading at Alpine, Tex., a verdict should be returned in favor of the Galveston, Harrisburg & San Antonio Railway Company.

The trial court in his general charge instructed the jury:

"But you are further charged that you cannot find against said defendant for any damages suffered by plaintiff's cattle, if any, because of plaintiff's agreeing to or acquiescing in the suggestion of the defendant's agent that the cattle be not shipped from Marfa to Alpine on the 11th day of June."

The plaintiff and his witness Gist testified that these cattle were penned about noon; the agent testifying that they were penned about 3:20 p. m. on the 11th, according to the report made to him by the shipper. As stated, the cattle did not leave Marfa until the next day for Alpine, at which point they were to be delivered to the Orient, a connecting carrier. The plaintiff further testified that the agent at Marfa informed him that there would be no need to make a shipment of cattle on the 11th, as he would not make the connection at Alpine, and he was informed of this fact late in the evening after they had penned the cattle and failed to get a train. If we interpret the statement of facts correctly, if plaintiff had shipped his cattle to Alpine on the 11th, there would have been no train at that place on the Orient for the purpose of forwarding the cattle; hence they would have had to have been unloaded again and reloaded for the continued transporta-

tion. The primary cause of the delay, from plaintiff's theory, was the failure to immediately ship the cattle by the Galveston, Harrisburg & San Antonio Railway Company when they were placed in the pens for that purpose. It is noted that there was about 30 hours' delay at Marfa, and the jury only returned a verdict of $286.25 against the Galveston, Harrisburg & San Antonio, though returning a verdict of $795 against the Santa Fé. If the cattle would have had to have been unloaded at Alpine on the 11th, there would have been more injury on that account than to have stayed in the pens at Marfa. It is clear from the record that there was some period of time intervening between the time the cattle were penned and the conversation that occurred between the agent and the owner of the cattle on the afternoon or evening of that date. There is, of course, a technical difference between the two charges, the one requested by the defendant Galveston, Harrisburg & San Antonio Railway Company and the one given by the court, but it is unlikely that any injury accrued to the defendant on account of the refusal of its charge. The tenth assignment is overruled.

[10] Reverting to the third assignment of error, it is complained that the trial court should not have permitted the witness Gist to testify, over the numerous objections of the defendant, "that by reason of the delay in the pens at Marfa he would consider that the plaintiff's cattle were damaged about $2 or $3 per head." The first proposition asserts that this was an opinion and conclusion of the witness and inadmissible on that account; the second, that the testimony was inadmissible because it is not a proper method of proving the measure of damages; the third, because from the witness' own statement he was shown not to be qualified to give the testimony. This witness had more than 25 years' experience in the cattle business. At the time of the trial he owned and conducted four ranches, had bought and sold a great many cattle, and had had considerable experience in shipping cattle, and had made several shipments of cattle from the station at Marfa, two of which were in the section of country in which Plainview was situated. He testified: •

That holding the cattle in the pens at Marfa affected their flesh and strength and rendered them less fit to stand the shipment. "The holding of these cattle at Marfa in the pens injured them—holding them there and starving them for twenty-six hours. It was bound to weaken them. It decreased their flesh and weakened their condition, and that would certainly affect their market value. If these cattle had gone on to Plainview without suffering any injuries, except such as cattle necessarily suffer, they would have been worth less at Plainview than they would have been worth had they not been held in the pens at Marfa so long. From my experience as a shipper, considering the distance these cattle were shipped and the condition they were in, these cattle could have been shipped from Marfa to Plainview, and should have arrived there in ordinarily good condition. I don't see why they could not."

While this witness' testimony assigned as erroneous indicates that he hesitated considerably in delivering his opinion, and at one period in the examination stated that he could not give it because he had not seen the cattle at Plainview when they arrived there, it is, however, evident from the experience of this witness as a cattleman and as a shipper he had a conception of what would constitute a usual run as to this particular shipment. He was with these cattle during the time of the delay at Marfa, and did not leave the train until they arrived at Sweetwater, where they were delivered to the Santa Fé for transportation to Plainview. The jury on account of the small verdict against the Galveston, Harrisburg & San Antonio evidently took into consideration the alleged acquiescence of Vaughn, the owner of the cattle, to the agent's statement at Marfa in holding them from the 11th to the 12th for shipment. The shipper had already testified that the cattle were damaged some $5 per head, and the market value of the particular cattle at Plainview at the time of delivery was sufficiently shown. If the admission of this testimony could be held to be technically erroneous, which we seriously doubt, considering, however, the whole record, we likewise think with reference to this assignment that the testimony was wholly harmless.

It is unnecessary to discuss the eleventh assignment of error, which is practically a review of the whole case and of the same matters raised in previous assignments.

The judgment of the trial court is affirmed.

### On Motion for Rehearing.

Complaint is made in the motion for rehearing that we merely overruled the eleventh assignment of error, with the statement that said assignment raised questions disposed of and discussed under other assignments of error. It is said in addition to the questions raised by preceding assignments that the eleventh assignment raises the question of a release clause in the shipping contract pleaded by the appellant Galveston, Harrisburg & San Antonio Railway Company of all claims for damages occurring prior to the loading of the cattle.

The particular question we did not discuss, because it was not raised by the assignment. The third proposition under this assignment does assert that all damages arising prior to the signing of the written contract were released, for a consideration, in a particular provision of that contract. The assignment, however, is a complaint of the refusal of the trial court of a peremptory instruction requested by the Galveston, Harrisburg & San Antonio Railway Company. It is to be noted that the special charge had appended to it, as suggestions, and as advisory instructions to the trial judge, five distinct grounds why a peremptory verdict

should be returned by the jury, and not one of them raises the question that the shipper, by a special contract, released all damages accruing prior to the time the written contract was signed and the cattle were loaded at Marfa. The peremptory instruction, with the five grounds asserted therein for the peremptory verdict, with a motion in hæc verba for new trial based thereupon, and the assignment necessarily predicated literally upon the same, and not including the particular proposition, excludes the point.

The trial court in his general charge submitted only the liability of the defendants based upon their duty as a common carrier. Appellant's brief in this court does not complain, one way or the other, as to any omission in not submitting a written contract to the jury. Plaintiffs pleaded an antecedent oral contract to the written contract with the usual allegations that the latter was signed after the cattle were loaded, and the court did not submit, so far as we are advised, the written contract. Whether the trial court regarded the oral contract as proven neither are we informed by the briefs, and there is no complaint in that respect of the general charge of the court.

[11] In this condition for appellant to submit specific grounds embodied in a peremptory charge why the same should be submitted to the jury, and in this court to then assert a proposition to sustain the charge upon another and different ground never presented to the trial court, will not be considered, especially in view of the record.